Estado Libre Asociado de Puerto Rico
PANEL I

| | | |
|---|---|---|
| HYUNG LEE Apelante v. RAMIRO BLANCO PÉREZ Apelado | TA2025AP00352 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón Caso núm.: BY2020CV03224 (401) Sobre: Daños y perjuicios; acción reivindicatoria |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de noviembre de 2025.

Por la vía sumaria, el Tribunal de Primera Instancia ("TPI") declaró con lugar una demanda sobre difamación y, así, condenó al demandado al pago de $1,000.00 por concepto los daños y perjuicios causados al demandante. Según explicamos en detalle a continuación, concluimos que procede la confirmación de lo actuado por el TPI, pues el demandante solicitó al TPI que adjudicara la cuantía de daños por la vía sumaria y la cuantía concedida es razonable a la luz de los hechos particulares de este caso.

I.

En octubre de 2020, el Sr. Hyung Soon Lee (el "Demandante" o "Apelante") presentó la acción de referencia, sobre difamación (la "Demanda"), en contra del Sr. Ramiro Blanco Pérez (el "Demandado" o "Apelado"). En lo pertinente, el Demandante alegó que el Demandado lo había difamado mediante el envío de un correo electrónico (el "Mensaje") a la Sa. Karla Barrera Morstad (la "Empresaria"). Se alegó que la Empresaria era dueña de un negocio de deportes acuáticos y que el Demandado le brindaba servicios de instructor al negocio.

El Demandante alegó que, en el Mensaje, el Demandado realizó varias imputaciones falsas en su contra: (1) que el Demandado le pagaba $10,000.00 mensuales a la Sa. Heather Dolan ("Heather") para que fuera su novia; (2) que el Demandante le hace mucho daño a otros debido a que posee mucho dinero, poder y abogados que lo ubican por encima de la ley; (3) que intentó atropellar con un auto a Heather en varias ocasiones; (4) que le ofreció $100,000.00 al Demandado para que terminara su relación con Heather; (5) que el Demandante echó a Heather del apartamento que compartían y dejó las pertenencias de esta en la calle; (6) que intentó causar el "despido" del Demandado; (7) que vació las gomas del auto del Demandado y le causó daños al mismo; y (8) que persistentemente amenazó a Heather.

El Demandante aseveró que, como consecuencia del Mensaje, su reputación y honra, en su carácter personal y como empresario, sufrió daños. Además, afirmó que sufrió angustias mentales y emocionales, así como daños económicos a su negocio, a causa del envío del Mensaje.

Luego de que el Demandado contestara la Demanda, y culminado el descubrimiento de prueba, en enero de 2024, el Demandante presentó una *Moción de Sentencia Sumaria* (la "Moción"). El Demandante solicitó "que se dicte sentencia sumaria a [s] favor [] **sin la necesidad de tener que celebrar una vista en su fondo**." (énfasis suplido).

Luego de que el Demandado se opusiera a la Moción, el Demandante presentó una *Réplica* (SUMAC #104), en la cual suplicó al TPI que dictara sentencia a su favor "**concediendo las partidas de daños solicitadas en la Demanda**" (énfasis suplido).

El 20 de agosto de 2025, el TPI notificó una *Sentencia,* mediante la cual declaró con lugar la Moción. El TPI concluyó que el Demandado difamó al Demandante y le impuso a aquél el pago de

$1,000.00, a favor de este último, por concepto de daños y perjuicios.  En lo atinente al recurso de referencia, el TPI concluyó lo siguiente:

> En cuanto al daño, el señor Lee alega que estos comentarios le podían afectar en su trabajo.  Sin embargo, estos comentarios no parecen haber provocado ningún daño extremo.  El informe pericial realizado por la Dra. Dor Marie Arroyo-Carrero del 31 de enero de 2023, más bien señala que, si el demandante sufrió daño, fue por la orden de protección que solicitó el señor Blanco, y no por los comentarios.  Por tanto, entendemos que el señor Lee solo sufrió un daño marginal, nada que sea extremo que amerite una compensación muy alta, por tanto sancionamos al demandado con $1,000.00, por los daños que le causó al demandante, por su actividad difamatoria.[1]

Inconforme, el 19 de septiembre, el Demandante presentó la apelación de referencia; formula los siguientes dos (2) señalamientos de error:

> A. Erró el TPI al emitir una sentencia concediendo una partida por daños sin señalar vista evidenciaria para desfilar prueba.
>
> B. En la alternativa, erró el TPI al emitir una sentencia concediendo una partida por daños por una cuantía que resulta incongruente con la magnitud del daño probado, así como con las cuantías reconocidas en casos análogos tanto en nuestra jurisdicción como en foros comparables.

El Demandado presentó su alegato en oposición.  Resolvemos.

## II.

La sentencia sumaria es un mecanismo cuya finalidad es "propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario".  *Meléndez González et. al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata v. J.F Montalvo,* 189 DPR 414, 430 (2013).  Este mecanismo procesal se rige por la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.

En particular, la Regla 36.3 (e) de las de Procedimiento Civil, *supra,* dispone que procede dictar sentencia sumaria si las

---

[1] Véase, *Sentencia*, Entrada 132 de SUMAC, págs. 10-11.

alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, si la hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica. Así, se permite disponer de asuntos pendientes ante el foro judicial sin necesidad de celebrar un juicio, ya que únicamente resta aplicar el derecho a los hechos no controvertidos. *Meléndez González et. al., supra; SLG Zapata, supra; Const. José Carro v. Mun. Dorado,* 186 DPR 113, 128 (2012).

Si se concluye que "existe una controversia **real y sustancial** sobre hechos relevantes y pertinentes", no procede dictar sentencia sumaria. *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010) (Énfasis nuestro). Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable. *Meléndez González et. al., supra; Ramos Pérez,* 178 DPR a la pág. 213, citando a J.A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609; *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001); *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 DPR 563, 577 (1997).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer, mediante prueba admisible en evidencia, la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, procede que se dicte sentencia a su favor. *Ramos Pérez, supra; Vera v. Dr. Bravo,* 161 DPR 308, 332-333 (2004). Cuando de las propias alegaciones, admisiones o declaraciones juradas, surge una controversia de hechos, la moción de sentencia sumaria es improcedente. *Mgmt. Adm. Servs., Corp. v. E.L.A.,* 152 DPR 599, 610 (2000).

Por su parte, quien se oponga a que se dicte sentencia sumaria debe controvertir la prueba presentada. La oposición debe exponer de forma detallada y específica los hechos pertinentes para demostrar que existe una controversia fáctica material, y debe ser tan detallada y específica como lo sea la moción de la parte promovente pues, de lo contrario, se dictará la sentencia sumaria en su contra, si procede en derecho. Regla 36 (c) de Procedimiento Civil, *supra.* Cuando la moción de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte opositora no puede descansar en meras alegaciones y debe proveer evidencia para demostrar la existencia de una controversia en torno a un hecho material. A tales efectos, el juzgador no está limitado por los hechos o documentos que se aduzcan en la solicitud, sino que debe considerar todos los documentos del expediente, sean o no parte de la solicitud de sentencia sumaria, de los cuales surjan admisiones hechas por las partes. *Const. José Carro v. Mun. Dorado,* 186 DPR a la pág. 130, citando a *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 280-281 (1990).

## III.

En una causa de acción por difamación se contraponen dos derechos constitucionales fundamentales. Por un lado, el derecho a la libertad de expresión y de prensa, las cuales son "vitales, para la existencia misma de la democracia". *Pérez Vda. de Muñiz v. Criado Amunategui,* 151 DPR 355, 367 (2000), citando a *Aponte Martínez v. Lugo,* 100 DPR 282 (1971)); véase, además, *Pueblo v. Burgos,* 75 DPR 551, 570 (1953).

Por el otro lado, tenemos el principio de la inviolabilidad de la "dignidad del ser humano" y el derecho de una persona a "protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". Artículo II, Secs. 1, 4 y 8 de la Constitución

del Estado Libre Asociado de Puerto Rico, ELA. Const. PR, Art. II, Secs. 1, 4 y 8, 1 LPRA.

Nuestro ordenamiento jurídico reconoce la causa de acción por daños y perjuicios por la publicación de información libelosa o difamatoria bajo el Artículo 1802 del Código Civil de 1930,1 31 LPRA ant. sec. 5141,[2] y la Ley de 19 de febrero de 1902, conocida como Ley de Libelo y Calumnia de Puerto Rico (la "Ley de Libelo y Calumnia"), 32 LPRA secs. 3142 *et seq.* Para que proceda una acción de libelo se requiere que exista un récord permanente de la expresión difamatoria. Por su parte, la calumnia se configura con la mera expresión oral difamatoria. *Pérez v. El Vocero de P.R.*, 149 DPR 427, 441 (1999); *Ojeda Ojeda v. El Vocero*, 137 DPR 315, 326 (1994). En esencia, se penaliza la publicación de información falsa que afecta adversamente la imagen de la persona en la comunidad y le produce daños. *Villanueva v. Hernández Class*, 128 DPR 618, 642 (1991).

Para que exista libelo resulta indispensable que la comunicación asevere una cuestión de hecho cuya falsedad pueda ser establecida. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 148 (2013); *Asoc. Med. Podiátrica v. Romero*, 157 DPR 240, 246 (2002); *Soc. de Gananciales v. El Vocero de P.R.*, 135 DPR 122, 128 (1994). Expresiones de opinión que no aseveran hechos, hipérboles retóricas y otro tipo de manifestaciones, que no contienen aseveraciones que puedan ser ciertas o falsas, gozan de protección constitucional. *Colón, Ramírez v. Televicentro de P.R.*, 175 DPR 690, 712 (2009); *Asoc. Med. Podiátrica, supra.* Lo anterior, incluye las parodias y otras expresiones humorísticas. *Garib Bazain v. Clavell*, 135 DPR 475, 492 (1994).

---

[2] Hacemos referencia al Código Civil de 1930 por estar vigente al momento de los hechos.

La difamación se ha definido como desacreditar a una persona publicando cosas contra su reputación. *Pérez*, 149 DPR a la pág. 441. La doctrina de difamación reconoce dos vertientes, cada una con sus respectivas exigencias constitucionales, conforme la clasificación del demandante como funcionario o figura pública o como persona privada. *Meléndez Vega*, 189 DPR a la pág. 147. Así pues, para que prospere una acción por difamación, se requiere que el demandante pruebe lo siguiente:

> (1) la falsedad de la información publicada; (2) los daños reales sufridos a causa de dicha publicación; (3) si el demandante es una figura privada, hay que demostrar que las expresiones fueron hechas negligentemente, y (4) si el demandante es una figura pública, en vez, hay que demostrar que las expresiones se hicieron con malicia real, es decir, a sabiendas de que era falso o con grave menosprecio de si era falso o no. *Garib Bazain v. Clavell*, 135 DPR a la pág. 482.

Como vemos, el alcance de la responsabilidad varía dependiendo de si la persona objeto de la publicación es una figura o funcionario público o, alternativamente, una persona privada. Cuando el reclamante es una persona privada, el demandado responde si la publicación se produjo de forma negligente. *Colón, Ramírez*, 175 DPR a la pág. 706; *Torres Silva v. El Mundo, Inc.*, 106 DPR 415, 423-424 (1977). Por otro lado, en el caso de una figura pública, el reclamante tiene que probar que la expresión fue publicada con malicia real, esto es, con conocimiento de que la información era falsa o con grave menosprecio de su veracidad. *Meléndez Vega, supra*; *Garib Bazain, supra*. La malicia real debe probarse "mediante prueba clara y convincente". *Íd.*, a la pág. 484.

IV.

El Artículo 1802 del Código Civil de 1930, *supra*, establecía que la persona que, por acción u omisión, cause daño a otro, mediando culpa o negligencia, estará obligada a reparar el daño causado. Este tipo de acción procede cuando se viola un "deber general de corrección en relación con los demás ciudadanos [que] es

requisito indispensable para la convivencia social ordenada." *Ocasio Juarbe v. Eastern Air Lines*, 125 DPR 410, 418 (1990). Para que prospere la acción, se requiere que la parte demandante pruebe los siguientes tres elementos: (1) un acto o una omisión culposa o negligente; (2) relación causal entre el acto o la omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. *López v. Porrata Doria*, 169 DPR 135, 150 (2006).

El concepto de culpa o negligencia se refiere a "la falta de debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto [o la omisión de un acto] que una persona prudente habría de prever en las mismas circunstancias". *Valle v. ELA*, 157 DPR 1, 18 (2002). La negligencia por omisión supone la existencia de un deber jurídico cuyo cumplimiento hubiese evitado el daño. En cuanto al requisito de relación causal, el estándar aplicable es el de causalidad adecuada; ésta se define como "la condición que ordinariamente produce el daño, según la experiencia general". *López*, 169 DPR a la pág. 152.

Por otra parte, el daño se compone de todo menoscabo material o moral que sufre una persona en sus bienes, propiedad o patrimonio, por el cual otra persona ha de responder. *García Pagán v. Shiley Caribbean*, 122 DPR 193, 205-206 (1988). Es decir, el menoscabo puede infligirse en los bienes vitales naturales, la propiedad o el patrimonio del perjudicado. *Nieves Díaz v. González Massas*, 178 DPR 820, 845 (2010). El daño sufrido debe ser real y palpable, no vago o especulativo. *Soto Cabral v. ELA*, 138 DPR 298 (1995).

La previsibilidad que exige el ordenamiento no es de toda posible consecuencia de un acto u omisión sino de aquello que sea razonablemente previsible. En otras palabras, el deber de anticipar y prever los daños no abarca todo riesgo imaginable; sólo se relaciona con riesgos que una persona prudente y razonable hubiese

anticipado. *López*, 169 DPR a la pág. 171. Una persona prudente y razonable es aquella que actúa con el grado de cuidado, diligencia, vigilancia y precaución que exigen las circunstancias. *Nieves Díaz*, 178 DPR a la pág. 844.

La dificultad en la evaluación de los daños es mayor con respecto a la compensación por angustias y sufrimientos mentales, pues son intangibles. Se incluyen bajo este concepto diversas categorías de daños, tales como daño emocional, ansiedad, pérdida de afecto y otros daños similares de naturaleza intangible. B. Dobbs, *The Law of Torts*; Vol. 2, West Group. St. Paul Minn., 2001, pág. 821. Véase, además, Antonio J. Amadeo Murga, *El Valor de los Daños en la Responsabilidad Civil*, Tomo I, Editorial Esmaco, 1997, págs. 220 y subsiguientes. No basta una pena pasajera, sino que deben probarse sufrimientos y angustias morales profundas. *Moa v. ELA*, 100 DPR 573, 587 (1972).

La valoración del daño es una difícil tarea que descansa en la sana discreción del juzgador guiado por su sentido de justicia. *Blás v. Hosp. Guadalupe*, 146 DPR 267, 339 (1998); *Urrutia v. AAA*, 103 DPR 643, 647 (1975). Dicho proceso de valoración es complejo debido a la falta de un mecanismo que permita determinar con exactitud la cantidad de los daños sufridos por una persona. *Rodríguez Cancel v. AEE*, 116 DPR 443, 451 (1985). Las cuantías otorgadas en casos anteriores sirven como punto de partida y referencia para pasar juicio sobre los daños concedidos por el TPI. *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 491 (2016); *Rodríguez Ramos v. Hospital Dr. Susoni, Inc.*, 186 DPR 889, 909-910 (2012); *Herrera Bolívar v. Ramírez Torres*, 179 DPR 774, 785 (2010). "En todo caso, estas compensaciones otorgadas en casos anteriores deben ajustarse a su valor presente", pues deben ser atemperadas a la realidad económica del momento en que la compensación habrá

de ser concedida. *Santiago Montañez*, 195 DPR a la pág. 491; *Herrera Bolívar, supra*; *Rojas v. Maldonado*, 68 DPR 818 (1948).

Los tribunales apelativos nos abstendremos de intervenir con la valoración de daños que haya realizado el TPI, salvo cuando la cuantía concedida resulte ridículamente baja o exageradamente alta. *Santiago Montañez*, 195 DPR 476, 490-491 (2016). Es norma reiterada que una valoración exagerada tiene un efecto punitivo ajeno a nuestro ordenamiento civil. A la vez, "[c]onceder cuantías insuficientes por concepto de daños sufridos tiene el efecto de menospreciar la responsabilidad civil a la que deben estar sujetas las actuaciones antijurídicas". A.J. Amadeo Murga, *op cit.*, pág. 31.

V.

Aunque, de ordinario, y según reconocido por el TPI[3], es necesario celebrar una vista evidenciaria para adjudicar una cuantía de daños por angustias mentales, concluimos que, en este caso, el TPI podía válidamente disponer de la totalidad del caso por la vía sumaria.

En primer lugar, resaltamos que así lo solicitó explícitamente el propio Demandante, según arriba consignado. En apoyo de esta solicitud, el Demandante propuso en la Moción diecisiete (17) hechos no controvertidos los cuales, a su juicio, le permitían al TPI adjudicar los daños por él sufridos. Véase Moción (SUMAC Núm. 93, págs. 21-24, hechos 117 al 133). En apoyo de estas aseveraciones, el Demandante acompañó con la Moción un Informe Pericial (el "Informe"), preparado por la Dra. Dor Marie Arroyo Carrero (la "Psiquiatra"), del cual surge el resultado de la evaluación que esta le realizó al Demandante. Es decir, aunque el Demandante objeta que no tuvo oportunidad de presentar evidencia adicional

---

[3] De acuerdo con la *Minuta* que recoge las incidencias de la vista del 24 de octubre de 2024, el TPI consignó que no podría resolver sumariamente los "daños alegados porque para eso se requiere que se pase prueba". Véase, *Minuta*, Entrada 118 de SUMAC.

ante el TPI sobre los daños sufridos, la realidad es que en momento alguno este se lo solicitó a dicho foro; al revés, le solicitó al TPI que determinase los daños únicamente sobre la base del Informe.

En segundo lugar, no surge del récord que el Demandante haya planteado que, en una vista evidenciaria, ofrecería prueba materialmente distinta a la que ya obra en el expediente. En su escrito de apelación, el Demandante se limita a la escueta aseveración de que "cuenta con evidencia que respalda los daños reclamados", los cuales él estima "en no menos de $10,000,000.00". Sin embargo, ni en su apelación, ni ante el TPI, articuló exactamente qué hechos, distintos a los que surgen del Informe, podrían probarse en una vista evidenciaria, ni mucho menos en qué consistiría dicha prueba.

Por otro lado, tampoco podemos concluir que la cuantía concedida por el TPI sea ridículamente baja. Resaltamos, al respecto, que **quien solicite una modificación en la cuantía otorgada tiene la carga de probar su necesidad.** *Meléndez Vega*, 189 DPR a la pág. 203. Simplemente alegar que la compensación es inadecuada no basta para que los foros apelativos la modifiquen. *Albino v. Ángel Martínez, Inc.*, 171 DPR 457, 487 (2007).

En este caso, sobre la base de la Moción y sus anejos, concluimos que no se ha demostrado que se justifique un aumento en la cuantía otorgada. Del Informe, producto de una evaluación realizada al Demandante dos años luego de enviado el Mensaje, no surge el tipo de sufrimiento profundo que podría llevarnos a concluir que la cuantía concedida es muy baja. Lo que se describe, en cambio, es que el Demandante ha tenido "ansiedad", "angustia" y "estrés", sin mayor elaboración, siendo diagnosticado con "Trastorno de Adaptación con Ansiedad". No obstante, según el Informe, ello surgió como consecuencia de la "litigación civil", la cual "provoca estrés y por ende se asocia a exacerbaciones de

enfermedades de salud mental." Aun de poder inferirse que parte de la ansiedad y angustia del Demandante pueda ser producto del Mensaje, de todas maneras, del Informe no surge prueba suficiente, en cuanto a la naturaleza y magnitud de la referida ansiedad y angustia, como para concluir que haya sido irrazonable la estimación de daños del TPI.

Tampoco los casos del Tribunal Supremo de Puerto Rico, citados por el Demandante, justifican que se aumente la cuantía concedida por el TPI. Adviértase que, en este caso, el Mensaje fue enviado a una sola persona y el récord no contiene evidencia alguna de que el mismo haya sido divulgado a otras personas, ni por el Demandado ni por la Empresaria. En cambio, en los casos citados por el Demandante, las expresiones difamatorias fueron difundidas mucho más ampliamente.[4]

En fin, el récord no contiene evidencia, ni el Demandante realmente ha aseverado contar con evidencia, que sustente lo alegado en la Demanda sobre la naturaleza y magnitud de los daños sufridos. Lo que el récord sí refleja es el envío de un solo Mensaje, al cual solo tuvieron acceso el remitente (Demandado) y la receptora (la Empresaria), y el cual se envía en el contexto de una relación comercial entre estos. También surge del récord, a lo sumo, algún grado de incomodidad por parte del Demandante con las aseveraciones del Demandado en el Mensaje, pero no evidencia de que el Demandante haya necesitado tratamientos, terapias o medicamentos, o de que este haya de algún modo tenido sufrimientos y angustias morales profundas. *Moa v. ELA, supra.* Tampoco se ofreció, ni se ha alegado que exista, evidencia de daños materiales, pérdidas económicas o de que los negocios del

---

[4] Véase *Irizarry v. Porto Rico Auto Corporation*, 60 DPR 1 (1942) ("la publicación no sólo se hizo a los policías", sino que también "se enteraron otras personas"); *Benet v. Hernández*, 22 DPR 494 (1915) (las declaraciones difamatorias se publicaron en un periódico).

Demandante se hayan perjudicado como consecuencia del envío del

Mensaje[5].

VI.

Por los fundamentos que anteceden, se confirma la sentencia

apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del

Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones

---

[5] Más aún, lo que surge del récord es que gran parte de la angustia del Demandante surgió a raíz de la orden de protección *ex parte* que procuró el Demandado, a diferencia del envío del Mensaje. Por supuesto, en nuestra jurisdicción no son compensables los daños como consecuencia de la litigación civil. *Parrilla v. Ranger American PR*, 133 DPR 263, 273 (1993); *Raldins v. Levitt and Sons of PR,* 103 DPR 778, 782 (1975); *Toro Rivera v. ELA,* 194 DPR 393, 409 (2015).